# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| JACK KELLEY, *et al*, | : | Case No. 1:07-cv-8 |
| | : | |
| Plaintiffs, | : | Weber, J. |
| | : | Black, M.J. |
| vs. | : | |
| | : | |
| UNICO HOLDINGS, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATION[1] THAT: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 19) BE GRANTED AND THIS CASE BE CLOSED; DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 21) BE DENIED AS MOOT; AND DEFENDANTS' MOTION TO STRIKE (Doc. 28) BE DENIED AS MOOT**

This civil action is now before the Court on: (1) the motion for summary judgment filed by Defendants, Unico Holdings, Inc. and CVS Pharmacy, Inc. (Doc. 19) and the parties' responsive memoranda (Docs. 25, 29); (2) Defendants' motion for partial summary judgment (Doc. 21) and the parties' responsive memoranda (Docs. 24, 30); and (3) Defendants' motion to strike (Doc. 28).

## I. BACKGROUND AND FACTS

In March 2005, Plaintiff, Jack Kelley ("Kelley"), was scheduled to undergo a routine screening colonoscopy with Dr. Kim Jurell, a Board certified gastroenterologist

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

with Greater Cincinnati Gastroenterology Associates. (Kelley Deposition, p. 31). Before the procedure, Kelley was instructed by Dr. Jurell to separately consume two 1.5 fluid ounce (45 ml) bottles of Fleets Phospho-soda (an "oral saline laxative") within a 12 hour time period. (Kelley Deposition, p. 33, 38, 43).

On or about March 9, 2005, while out of town on business, Kelley allegedly purchased an oral saline laxative ("the CVS laxative") from a Nashville, Tennessee CVS store in preparation for his scheduled colonoscopy on March 11, 2005. (Kelley Deposition, pp. 45-47). The CVS laxative is manufactured, packaged and distributed by Defendant, Unico Holdings, Inc. (Affidavit of Edward Finnegan, attached as Exhibit B to Defendants' motion for summary judgment). At the Nashville CVS store, Kelley compared the CVS laxative to the "national brand" Fleet Phospho-soda and, noting that the active ingredients were the same, purchased the CVS laxative as a lower cost alternative. (Kelley Deposition, p. 47).

Initially, Kelley testified at deposition in this case that he purchased two separate 1.5 ounce packages of the CVS product from the Nashville CVS store. After learning that Defendants only manufactured and sold 3 ounce packages at the time of Kelley's alleged purchase, and that the Nashville CVS store sold only one 3 ounce package of the CVS laxative during the week of Kelley's alleged purchase, Kelley now remembers purchasing only a single 3 ounce package of the CVS laxative from the Nashville CVS store. (Kelley Affidavit, ¶¶6-7, attached as Exhibit A to Plaintiffs' response in opposition

to summary judgment; see, also, Exhibits B & C, attached to Defendants' motion for summary judgment).

On March 10, 2005, Kelley traveled back to Cincinnati from Nashville. (Kelley Deposition, pp. 53-55). Before taking the CVS laxative in preparation for his colonoscopy, Kelley read the warning label on the product package, which provides:

> **Uses**
> • as a laxative, for relief of occasional constipation
> • as a purgative, for use as part of a bowel cleansing regimen in preparation of surgery, x-ray or endoscopic examination
>
> **Warnings**
> **Dosage warning: Taking more than the recommended dose in 24 hours can be harmful.**
>
> **Do not use or stop using this product and consult a doctor if you:**
> • have rectal bleeding
> • have no bowel movement after use, as dehydration may occur
>
> **Ask a doctor before using this product if:**
> • You have nausea, vomiting, or abdominal pain
> • You have a kidney disease
> • You have a sudden change in bowel habits lasting more than 2 weeks
> • You have already used a laxative for more than 1 week

(Exhibit B, attached to Defendants' motion for summary judgment). The product recommended a dose of "20 to 45mL" for adults and children over 12. (*Id*.) The package further states that 45mL (or 1.5 ounces) is a single daily dose and warns consumers to "**NOT** take more of this product unless directed by a doctor (see warnings)." (*Id*.)

-3-

Though Kelley remembered reading the package, he admitted that, to the extent the CVS laxative package contained information conflicting with Dr. Jurell's instructions, he would defer to Dr. Jurell's instructions. (Kelley Deposition, p. 59).

After reading the package and opening the product, Kelley took the first dose of the product at approximately 4:00 p.m., March 10, 2005. (Kelley Deposition, p. 55). Kelley contends that he consumed only 1.5 ounces for his first dose. Sometime later, either during the evening of March 10, 2005, or the next morning, March 11, 2005, Kelley took a second dose of the product. (Kelley Deposition, p. 69). Again, Kelley contends that he consumed only 1.5 ounces of the product for his second dose as well.

On March 11, 2005, Kelley underwent his routine colonoscopy. (Kelley Deposition, p. 69). Immediately following the procedure, Kelley began experiencing stomach soreness, fatigue, weakness, a strange taste in his mouth, and bouts of nausea and vomiting. (Kelley Deposition, pp. 82). Kelley contacted both his primary care physician and Dr. Jurell. (Kelley Deposition, p. 85). Dr. Jurell told Kelley that there were no complications with the procedure. (Kelley Deposition, p. 82). Kelley was referred to a nephrologist and underwent a kidney biopsy. (Kelley Deposition, p. 87, 102-103). Kelley was informed that he may have sustained an acute kidney injury as a result of using the CVS laxative in preparation for his colonoscopy. (Kelley Deposition, p. 102-103).

## II. PROCEDURAL HISTORY

Plaintiffs, Jack and Pamela Kelley (collectively referred to herein as "Plaintiffs"), filed a complaint against Unico Holdings, Inc. and CVS Pharmacy, Inc. (collectively referred to herein as "Defendants"), in the Common Pleas Court of Butler County, Ohio, on November 28, 2006. Plaintiffs allege the following causes of action in the complaint: (1) product liability - inadequate warning; (2) product liability - defective design and formulation; (3) unjust enrichment; (4) fraud and deceit; (5) violations of Ohio's Consumer Sales Practices Act; and (6) loss of consortium. In their prayer for relief, Plaintiffs, among other relief, requested punitive damages.

This action was removed to this Court on the basis of diversity jurisdiction. Following removal to this court, Defendants filed a motion for summary judgment (Doc. 19) and a separate motion for partial summary judgment (Doc. 21) regarding the applicability of Ohio's damage caps on non-economic damages. Plaintiffs filed responses to both motions (Docs. 24, 25). In support of their response in opposition to Defendants' motion for summary judgment, Plaintiffs included: (A) an affidavit of Kelley; (B) excerpts from Kelley's deposition; (C) an expert report authored by Arthur H. Cohen, M.D.; (D) an expert report authored by Eric Brown, M.D.; (E) an article titled, "Renal Failure Due to Acute Nephrocalcinosis Following Oral Sodium Phosphate Bowel Cleansing"; and (F) excerpts from the deposition of Kim Jurell, M.D. (Attached to Doc. 25).

Defendants moved to strike (Doc. 28) the affidavit as Kelley on the grounds that it was directly contradictory of his deposition testimony.  Defendants also moved to strike Exhibits C, D and E on hearsay grounds.

### III.  STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(C).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.  All facts and inferences must be construed in a light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . .  must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

### IV.  ANALYSIS OF PLAINTIFFS' CLAIMS

### A.  Product Liability

**1.** *Actual Use of the CVS laxative*

Defendants argue that Plaintiffs' claims must fail as a matter of law because

Plaintiffs have not shown actual use of Defendants' product. Defendants point to Kelley's deposition testimony, wherein he was adamant that he purchased two 1.5 ounce bottles of the CVS laxative. Defendants show, however, that at the time of Kelley's alleged purchase of the CVS laxative, they only manufactured and sold 3 ounce bottles of the CVS laxative, and only began selling 1.5 ounce bottles of the CVS laxative at a later time. (Finnegan Affidavit, ¶11, attached as Exhibit B to Defendants' motion for summary judgment). Further, the Nashville CVS store where Kelley allegedly purchased the product only sold one 3 ounce bottle during the week of Kelley's alleged purchase, a fact Plaintiffs apparently now concedes.

In response to Defendants' contention, Plaintiffs submitted an affidavit of Kelley, wherein Kelley states that he was mistaken during his deposition, and that following the deposition, he remembered that he only purchased one 3 ounce bottle of the CVS laxative. (Kelley Affidavit, ¶7). According to Kelley, from time to time before his deposition, he shopped at CVS stores and saw 1.5 ounce bottles of the CVS laxative for sale. (*Id*., ¶6). Based on those observations, Kelley contends in his affidavit that he "mistakenly believed" that he "purchased two 1.5 ounce bottles" and testified during his deposition about his mistaken belief. (*Id*.) Upon learning that records from the Nashville CVS store reflected "the sale of a single 3 oz. package" of the CVS laxative "for the sales week that included March 9, 2005[,]" Kelley now recalls purchasing only a single 3 ounce bottle of the CVS laxative. (*Id*., ¶7).

Defendants seek to strike Kelley's affidavit testimony as inconsistent with his previous deposition testimony. "[A] party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his earlier deposition testimony." *Penny v. United Parcel Service*, 128 F.3d 408, 415 (6th Cir. 1997) (citing *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986)). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Reid*, 790 F.2d at 460.

Without even considering Kelley's affidavit, issues of fact still remain. While the conflict between Kelley's deposition testimony and CVS's records raise questions as to whether Kelley actually used the CVS laxative, for purposes of summary judgment, we must construe the facts in Plaintiffs' favor. In his deposition, Kelley specifically remembers entering a CVS store in Nashville, Tennessee, and purchasing the CVS brand oral saline laxative. In total, Kelley recalls purchasing 3 total ounces of the CVS laxative, and consuming the entire amount. As a result, even without considering Kelley's affidavit, an issue of fact remains regarding Kelley's use of the CVS laxative.

### 2. *Inadequate warnings*

Defendants argue that Plaintiff's inadequate warning claim must fail as a matter of law because there is no scientific evidence linking the use of the CVS laxative to acute

kidney impairment and because the CVS laxative label complied with applicable federal regulations. Further, Defendants contend that Plaintiffs cannot show proximate causation because Kelley would have used the CVS laxative regardless of any additional warnings on the CVS laxative package. Plaintiffs' response, in essence, asserts that the CVS laxative warnings failed to adequately warn that use of the CVS laxative could result in acute kidney damage.

Under Ohio law, inadequate warnings or instructions render a product defective if:

> (1) It is defective due to inadequate warning or instruction at the time of marketing if, when it left the control of its manufacturer, both of the following applied:
>
> (a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages;
>
> (b) The manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm.

Ohio Rev. Code Ann. 2307.73(A). Failure to warn or instruct "about open and obvious risks or a risk that is a matter of common knowledge" does not render a product defective. Ohio Rev. Code Ann. 2307.73(B).

i. *Knowledge of Risk*

Defendants contend that they had no knowledge, either actual or constructive,

regarding any risk of acute kidney damage associated with the use of oral sodium phosphate solution. Defendants argue that, in March 2005, there was not sufficient scientific evidence suggesting any association "between using sodium phosphate laxatives and acute kidney impairment even when consumed in an off-label, 2 x 45mL [1.5 oz.] dosing regimen."

In an effort to demonstrate actual or constructive knowledge on Defendants' part, Plaintiffs point to an expert report authored by Arthur Cohen, M.D. Dr. Cohen's deposition testimony, rather than his unauthenticated and unsworn expert report, demonstrates that:

> probably five years ago, four years ago, a report or two appeared in the literature describing the association of preparation of patients for colonoscopy using oral sodium phosphate solution and the subsequent appearance of kidney disease with the pathology that we had observed in our material, but had not put together with the clinical antecedent findings or procedures.

(Cohen Deposition, p. 12). Dr. Cohen also testified that he was likely aware of a possible association between kidney disease and the use of oral sodium phosphate solution in 2004, following a single-case report he read. (Cohen Deposition, pp. 26-27). However, Dr. Cohen acknowledged that "[a] single case report doesn't carry the weight of final proof[,]" and that a scientifically accepted association between sodium phosphate solution and acute phosphate nephropathy until "sometime after '05 probably during '06[.]" (Cohen Deposition, pp. 30-31).

While the possible link between acute phosphate nephropathy and the use of oral sodium phosphate solution was just being discovered around the time Kelley purchased the CVS product in March 2005, the Court must view this evidence in a light most favorable to Plaintiffs. In doing so, genuine issues of material fact remain regarding the issue of whether Defendants knew or should have known of the risk of developing acute phosphate nephropathy following use of the CVS laxative. Such a finding, however, does not end the inquiry into Plaintiffs' inadequate warning claim.

<em>ii.    Proximate cause</em>

Defendants also contend that there is no evidence suggesting proximate cause. Plaintiffs bear the burden of establishing a defect and establishing that such defect proximately caused the claimed injury. *See* Ohio Rev Code Ann. 2307.73(A)(2). Plaintiffs "not only must convince the fact finder that the warning provided is unreasonable, hence inadequate, but he also must establish the existence of proximate cause between the [product] and the fact of the plaintiff's injury." *Hisrich v. Volvo Cars of North America, Inc.*, 226 F.3d 445, 450-451 (6th Cir. 2000) (citing *Seley v. G.D. Searle Co.*, 67 Ohio St.2d 192, 423 N.E.2d 831, 838 (Ohio 1981). "'In analyzing the proximate cause issue as it relates to failure-to-warn cases,' the Ohio Supreme Court 'divided proximate causation . . . into two sub-issues: (1) whether lack of adequate warnings contributed to the plaintiff's [use of the product], and (2) whether [use of the product] constitute[d] a proximate cause of the plaintiff's injury." *Id*.

With regard to the second sub-issue, *i.e.*, whether Kelley's use of the product caused the alleged injury, there remains a genuine issue of fact. Specifically, Plaintiffs' expert, Dr. Cohen, testified at deposition that, in his opinion, Kelley's injury was related to his use of the CVS product in preparation for his colonoscopy. (Cohen Deposition, p. 32). Such evidence creates a genuine issue of fact as to whether use of the CVS product caused Plaintiffs' alleged injuries.

However, Plaintiff must also demonstrate that the failure to warn consumers of possible kidney complications associated with the use of the CVS laxative contributed to Kelley's use of the CVS laxative. Defendants argue that, even in the presence of such warning, Kelley would have still deferred to his physician's directions and used the CVS laxative. Plaintiffs provide no counter to such proposition.

Defendants' contention is supported by the evidence. Kelley remembers reading the CVS laxative warnings and directions. (Kelley Deposition, p. 56). Despite the fact that the CVS laxative packaging recommended a daily dose of 1.5 ounces, and warned that exceeding "the recommended dose in 24 hours can be harmful,"[2] Kelley deferred to Dr. Jurell's instructions to take twice the daily dose in preparation for the colonoscopy. In essence, Kelley's testimony establishes that, despite anything on the label of the package, Kelley was intent on following Dr. Jurell's instructions "to a T." (Kelley Deposition, p. 59).

---

[2]      This exact warning is required by 21 C.F.R. 201.307(b)(2)(i).

Plaintiffs fail to produce evidence showing that a warning regarding possible kidney injury would have caused Kelley to refrain from following Dr. Jurell's instructions. As a result, no genuine issue of fact remains concerning the lack causation, and summary judgment in favor of Defendants is proper on Plaintiffs' failure to warn claim.

### 3. *Defective Design*

"[A] product is defective in design or formulation if, at the time it left the control of its manufacturer, the foreseeable risks associated with its design or formulation . . . exceeded the benefits associated with that design or formulation." Ohio Rev. Code Ann. 2307.75(A). Defendants argue that Plaintiffs' defective design claim cannot survive summary judgment because Plaintiffs failed to produce any scientific expert testimony supporting a conclusion that the risks associated with the CVS laxative outweighed the benefits associated with the laxative.

In support of their argument, Defendants present the expert affidavit of Keith A. Friedenberg, M.D., who opines that the CVS laxative is a safe and effective product, and that the benefits of the product "outweigh the risks particularly with regard to colon cleansing in preparation for colonoscopies." (Friedenberg Affidavit, attached as Exhibit D to Defendants' motion for summary judgment). Specifically, Dr. Friedenberg states that:

> there is no better prep in regard to patient tolerability and
> efficacy. Patient tolerability of colonoscopy preps is one of

the major barriers to patients undergoing screening colonoscopies. Screening colonoscopies save lives. Cleansing efficacy leads to more effective and more accurate endoscopic exams.

(Dr. Freidenberg Aff., ¶14).

Plaintiffs counter by arguing that the risks associated with the "double-dose" regimen recommended by physicians for bowel cleaning before colonoscopies outweigh the benefits associated with the product. In support of their assertion, Plaintiffs cite two exhibits attached to their response in opposition: (1) an unauthenticated and unsworn report authored by Arthur H. Cohen, M.D., of Cedars-Sinai Medical Center; and (2) a medical journal article titled "Renal Failure Due to Acute Nephrocalcinosis Following Oral Sodium Phosphate Bowel Cleansing."

Defendants moved to strike Dr. Cohen's report and the article arguing that both exhibits are hearsay and violate Fed.R.Civ.P. 56(E). Plaintiffs filed no response to Defendants' motion to strike. Both of the challenged documents, marked exhibits C and D and attached to Plaintiffs' response in opposition, are unauthenticated and unsworn.

Generally, it is improper for courts to rely on unsworn reports in ruling on a motion for summary judgment. See *Sigler v. American Honda Motor Co.*, 532 F.3d 469, 479-480 (6th Cir. 2008) (finding that a court's reliance on unsworn expert reports in support of summary judgment is improper under Fed.R.Civ.P 56). However, even if this Court considered both exhibits, the only conclusion that could be extracted from the exhibits is that using oral sodium phosphate laxatives for bowel cleansing purposes in

preparation for a colonoscopy presents some risk to patients. Neither exhibit addresses whether the risk outweighs the benefits associated with the drug. As a result, the only evidence of a risk/benefit conclusion is that provided by Defendants' expert, Dr. Freidenberg. According to Dr. Freidenburg, the benefits of the drug far outweigh the risks.

Further, the article may actually favor Defendants' position, in that it states: "Fleet Phospho-soda is a widely used and highly effective bowel-cleansing regimen for use before colonoscopy[,]" and that "irreversible ARF [acute renal failure] due to acute nephrocalcinosis is a rare adverse event." As a result, summary judgment in favor of Defendants on Plaintiffs' design defect claim is proper as a matter of law.

## B. Fraud

Defendants argue that Plaintiffs' fraud claim cannot withstand summary judgment because there is no evidence of false or misleading representations made by Defendants, and that no evidence supports any theory that the product was unsafe when used in the recommended dose set forth on the product package. Further, Defendants argue that Kelley did not rely on any representations made by Defendants in either purchasing or using the CVS laxative. In response, Plaintiffs argue that Defendants intentionally marketed their product as safe and effective for bowel cleansing use before undergoing colonoscopies.

To prevail on a claim of fraud under Ohio law, a party alleging fraud must prove:

> (a) a representation or, where there is a duty to disclose,
> concealment of a fact, (b) which is material to the transaction
> at hand, (c) made falsely, with knowledge of its falsity, or
> with such utter disregard and recklessness as to whether it is
> true or false that knowledge may be inferred, (d) with the
> intent of misleading another into relying upon it, (e)
> justifiable reliance upon the representation or concealment,
> and (f) a resulting injury proximately caused by the reliance.

*Groob v. KeyBank*, 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d 1170, 1178 (2006)

(quoting *Gaines v. Preterm-Cleveland Inc.*, 33 Ohio St.3d 54, 55, 514 N.E.2d 709

(1987)).

With regard to any false representation or concealment, Plaintiffs suggest that

Defendants marketed the product as safe for bowel cleansing before colonoscopies. The

CVS laxative label, in fact, lists among its uses: "a purgative for use as part of a bowel

cleansing regimen in preparation of surgery, x-ray or endoscopic examination[.]" (Exhibit

B, attached to Defendants' motion for summary judgment). However, the product

package also warns of harm when exceeding the recommended dose and instructs that

consumers not use more than the recommended daily dose unless told to do so by a

doctor. (*Id.*)

These statements set forth on the product label do not suggest an affirmative

representation by Defendants that the product is safe and effective for use as a bowel

cleansing aid when exceeding the recommended dose. In fact, Unico's current Chief

Operating Officer testified that, before March 10, 2005:

> Unico never marked its oral saline laxative product nor made
> any recommendations to consumers or doctors to exceed the
> on-label maximum daily dosage of Oral Saline Laxative for
> adults (20-45 mL).

(Finnegan Affidavit, ¶14). Further, there is no evidence that: (1) the CVS laxative is

unsafe or ineffective when used as a bowel cleanser in the recommended daily dose

(Cohen Deposition, p. 37; Friedenberg Affidavit, ¶11; Wish Affidavit, ¶¶6,8, attached as

Exhibit E to Defendants' motion for summary judgment);[3] or (2) that Defendants had any

knowledge of safety issues when used within the recommended dose.

Even assuming knowingly false representations or material concealments,

Plaintiffs have failed to prove reliance on any representation or concealment allegedly

made by Defendants. Specifically, Kelley's deposition testimony reveals that Kelley was

intent on following Dr. Jurell's instructions "to a T," and that Kelley would have

defaulted to Dr. Jurell's instructions despite any warning on the product package. (Kelley

Deposition, p. 59).

This conclusion is supported by the fact that the CVS laxative packaging

recommended a daily dose of 1.5 ounces and warned that exceeding "the recommended

dose in 24 hours can be harmful." (Exhibit B, attached to Defendants' motion for

summary judgment). Despite the instructions and warnings actually written on the

product package, Kelley testified that he deferred to Dr. Jurell's instructions and took, at

---

[3] In his deposition, Dr. Cohen testified that he was unaware of any published report or study suggesting a relationship between acute phosphate nephropathy and use of a single 1.5 ounce dose in a 24 hour time period.

least, twice the daily dose in preparation for his colonoscopy. As a result, there is no evidence of reliance on any allegedly false representation or concealment of fact.

Accordingly, Plaintiffs' fraud claim must fail as a matter of law because no genuine issues of material fact remain. Thus, summary judgment in favor of Defendants on Plaintiffs' fraud claim is granted.

### C. Ohio Consumer Sales Practices Act ("CSPA")

Defendants argue that Plaintiffs' CSPA claim must fail as a matter of law because it is a claim for personal injury. In support of their argument, Defendants cite Ohio Rev. Code Ann. 1345.12(C) and *Chamberlain v. Am. Tobacco Co.*, No. 1-96 CV 2005, 1999 U.S. Dist. LEXIS 22636, 1999 WL 33994451 (N.D. Ohio Nov. 19, 1999). Plaintiffs offer no counter to Defendants' assertion that the CSPA is inapplicable to claims of personal injury. Instead, Plaintiffs reassert their contention that Defendants falsely represented the CVS laxative as safe for bowel cleansing use in preparing for colonoscopies**.**

Ohio's Consumer Sales Practices Act ("CSPA") "prohibits suppliers from committing either unfair or deceptive consumer sales practices or unconscionable acts or practices as catalogued in R.C. 1345.02 and 1345.03." *Whitaker v. M.T. Automotive*, 111 Ohio St.3d 177, 2006-Ohio-5481, 855 N.E.2d 825, 829 (2006) (quoting *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791 (2005)). Because the CSPA is a remedial act, it must be liberally construed to achieve its purpose. *Id.*; Ohio Rev. Code Ann. 1.11.

Pursuant to Ohio Rev. Code Ann. 1345.12(C), the CSPA does not apply to "[c]laims for personal injury or death."  However, "R.C. 1345.12(C) will bar only claims that require proof of a personal injury in order to establish a CSPA violation[,]" not claims where personal injury is a consequence of the CSPA violation.  *Whitaker v. M.T. Automotive, Inc.*, 111 Ohio St.3d 1777, 2006-Ohio-5481, 855 N.E.2d 825, 833 (2006).  Here, Plaintiffs' alleged personal injuries do not establish the CSPA claims; instead, the alleged personal injuries were a consequence of the alleged CSPA violation, *i.e.*, an alleged misrepresentation of fact.  Such a conclusion, however, does not end the inquiry on summary judgment.

In support of their CSPA claim, Plaintiffs reassert their position that the CVS product was misrepresented as safe for bowel cleansing use before colonoscopies.  As set forth above, while the CVS product package describes its use "as a purgative for use as part of a bowel cleansing regimen in preparation of surgery, x-ray or endoscopic examination[,]" it does warn of harm when exceeding the recommended dose.  (Exhibit B, attached to Defendants' motion for summary judgment).  The product package instructs consumers against using more than the recommended daily dose unless instructed to do so by a doctor.  (*Id.*)  Contrary to Plaintiffs' contentions, these statements are not affirmative representations of the product's safety and effectiveness as a bowel cleanser when exceeding the recommended dose.  There is also no evidence that the CVS laxative is unsafe or ineffective when taken pursuant to the recommended daily dose.

Because the basis of Plaintiffs' CSPA claim, *i.e.*, a misrepresentation of fact, is not supported by any evidence, no genuine issues of material fact remain. Thus, summary judgment in favor of Defendants on Plaintiffs' CSPA claim is proper as a matter of law.

### D. Unjust Enrichment

"To prevail on a claim of unjust enrichment, a party must prove '(1) a benefit conferred by a plaintiff upon a defendant, (2) knowledge by the defendant of the benefit, and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment ('unjust enrichment').'" *Foley v. American Elec. Power*, 425 F.Supp.2d 863, 877, 875 (S.D. Ohio 2006) (quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 465 N.E.2d 1298, 1302 (1984)).

In support of their claim of unjust enrichment, Plaintiffs reassert their contention that "Defendants intentionally marketed and distributed their product as a safe and effective bowel cleanser for use prior to a medical procedure." However, as set forth above, the product label, at best, can be construed as a representation that the product is safe and effective as a bowel cleanser when used in the recommended dose. Further, Plaintiffs provide no evidence that the product is unsafe or ineffective when used in the recommended dose. Absent any evidence of a misrepresentation as alleged by Plaintiffs, it is not unjust for Defendants to retain the benefit conferred upon them by Plaintiffs.

Because the basis of Plaintiffs' unjust enrichment claim is not supported by any evidence, no genuine issues of material fact remain. Thus, summary judgment in favor of Defendants on Plaintiffs' unjust enrichment claim is proper as a matter of law.

### E. Loss of Consortium

"In Ohio it is well established that a wife has a cause of action for damages for loss of consortium against a person who, either intentionally or negligently, injures her husband and thereby deprives her of the love, care and companionship of her husband." *Perrine v. MPW Indus. Services, Inc.*, 213 F.Supp.2d 835, 849 (S.D. Ohio 2002) (citing *Clouston v. Remlinger Oldsmobile Cadillac, Inc.*, 22 Ohio St.2d 65, 258 N.E.2d 230, 235 (1970)). Here, absent any meritorious claim by Kelley, his wife's loss of consortium claim must also fail as a matter of law. As a result, summary judgment in favor of Defendants on Plaintiffs' loss of consortium claim is granted.

### F. Punitive Damages

Under Ohio law, punitive damages are generally allowable "in tort actions which involve fraud, malice or insult." *Preston v. Murty*, 32 Ohio St.3d 334, 512 N.E.2d 1174, 1175 (1987) (citing *Roberts v. Mason*, 10 Ohio St. 277 (1859)). "[S]omething more than mere negligence is always required." *Id.* "The purpose of punitive damages is not to compensate a plaintiff, but to punish and deter certain conduct." *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, 441 (2007) (citing *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 635 N.E.2d 331 (1994)). Actual malice is defined as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm."

*Preston*, 512 N.E.2d at 1176.

Here, Plaintiffs present no argument against Defendants' motion for summary judgment on Plaintiffs' prayer for punitive damages. Having found summary judgment proper in favor of Defendants on Plaintiffs' fraud claim, and finding no evidence supporting a claim of actual malice, summary judgment is proper on Plaintiffs' request for punitive damages.

## V. CONCLUSION

Accordingly, the undersigned finds that Defendants' motion for summary judgment is well-taken. Therefore, based on the foregoing, the undersigned **RECOMMENDS** that:

(1) Defendants' motion for summary judgment (Doc. 19) be **GRANTED**; and this case be **CLOSED**;

(2) Defendants' motion for partial summary judgment (Doc. 21) be **DENIED** as moot; and

(3) Defendants' motion to strike (Doc. 28) be **DENIED** as moot.

Date: July 16, 2009        s/ Timothy S. Black
                                      Timothy S. Black
                                      United States Magistrate Judge

JACK KELLEY, *et al*,                    :          Case No. 1:07-cv-8
                                         :
              Plaintiffs,                :          Weber, J.
                                         :          Black, M.J.
vs.                                      :
                                         :
UNICO HOLDINGS, INC., *et al.*,          :
                                         :
              Defendants.                :


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written

objections to this Report and Recommendation within **TEN DAYS** after being served with

a copy thereof.  That period may be extended by the Court on timely motion by either side

for an extension of time.  All objections shall specify the portion(s) of the Report and

Recommendation objected to and shall be accompanied by a memorandum of law in support

of the objections.  A party may respond to an opponent's objections within **TEN DAYS** after

being served with a copy those objections.  Failure to make objections in accordance with

this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United

States v. Walters*, 638 F.2d 947 (6th Cir. 1981).